IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FUNDAMENTAL INNOVATION SYSTEMS INTERNATIONAL, LLC, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:17-CV-01827-N |
| ZTE CORPORATION, *et al.*, | § § § | |
| Defendants. | § | |

## ORDER

This Order addresses Defendant ZTE Corporation's motion to dismiss for improper service [53]. For the reasons set forth below, the Court grants the motion. However, the Court permits Plaintiff Fundamental Innovation Systems International, LLC ("Fundamental") to effect alternative service on ZTE Corporation by serving its counsel in this action.

### I. BACKGROUND

This is a patent case. Fundamental alleges that ZTE and its subsidiaries, ZTE (USA), Inc. ("ZTE USA") and ZTE (TX), Inc. ("ZTE TX" and, collectively with ZTE USA and ZTE Corporation, the "ZTE Defendants"), infringed Fundamental's patents related to charging mobile devices using USB connections.

ZTE Corporation is a multinational telecommunications company based in Shenzhen, China. It employs more than 81,000 employees worldwide. ZTE Corporation designs, manufactures, and sells consumer electronics, mobile phones, and related accessories worldwide under the ZTE brand.

ORDER – PAGE 1

ZTE USA, a wholly owned subsidiary of ZTE Corporation, is a United States-based company incorporated in New Jersey and headquartered in Texas. ZTE USA employs nearly 400 people across the United States. It imports, markets, and sells consumer electronics, mobile phones, and related accessories in the United States under the ZTE brand.

ZTE Corporation and ZTE USA have related business activities, and ZTE Corporation provides advice to ZTE USA as the primary developer and manufacturer of the products that ZTE USA imports, markets, and sells in the United States. But the two companies maintain their own respective staffs and resources. They also have separate leadership, bylaws, and corporate boards.

Fundamental filed its patent infringement complaint against the ZTE Defendants on February 13, 2017.[1] After confirming that ZTE Corporation would not agree to waive service of process, Fundamental engaged a foreign process server to serve ZTE Corporation through Hague Convention procedures. Fundamental forwarded a copy of the summons, complaint, and other required documents, along with Chinese translations thereof, to the Central Authority of China. To date, Fundamental has not received confirmation of service via Hague Convention procedures, and the Central Authority in China does not provide a means for checking the status of a service request.

---

[1] Fundamental originally filed suit in the U.S. District Court for the Eastern District of Texas. The parties later agreed to transfer the case to the U.S. District Court for the Northern District of Texas. On June 22, 2017, the Honorable Rodney Gilstrap of the Eastern District of Texas issued an Order transferring the case to this Court [39].

At the same time that Fundamental attempted to serve ZTE Corporation through Hague Convention procedures, it also attempted to effect service by directly serving ZTE USA as ZTE Corporation's general agent. Fundamental sent a copy of the amended complaint, civil cover sheet, and summons to ZTE USA in Texas. But ZTE Corporation did not timely file an answer to Fundamental's complaint. ZTE Corporation now moves to dismiss for improper service under Federal Rule of Civil Procedure 12(b)(5).

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(5)

District courts cannot exercise jurisdiction over an improperly served defendant. *Glencore Ltd. v. Occidental Arg. Expl. and Prod., Inc.*, No. 11-CV-3070, 2012 WL 591226, at *2 (S.D. Tex. Feb. 22, 2012); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("In the absence of service of process (or waiver of service by a defendant), a court ordinarily may not exercise power over a party the complaint names as defendant.").

Federal Rule of Civil Procedure 12(b)(5) authorizes the dismissal of an action for insufficient service of process. Once a party has contested the validity of service, the plaintiff bears the burden of establishing that service was valid. *In re Katrina Canal Breaches Litig.*, 309 F. App'x 833, 835 (5th Cir. 2009) (per curiam). A court considering a Rule 12(b)(5) motion to dismiss must "accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Lisson v. ING Groep N.V.*, 262 F. App'x 567, 570–71 n.2 (5th Cir. 2007) (per curiam).

### B. Service of Process Under Federal Rule of Civil Procedure 4

Federal Rule of Civil Procedure 4(h) governs service of process on corporations. A party serving a corporation with process in the United States may serve the corporation "in the manner prescribed by Rule 4(e)(1) for serving an individual." FED. R. CIV. P. 4(h)(1)(A). Rule 4(e)(1) in turn permits service pursuant to the law of the state where the district court is located or the state where the corporation is served. *Id.* 4(e)(1).

Rule 4(f) governs service on corporations outside the United States. *See id.* 4(h)(2). Under Rule 4(f), a party may accomplish service on a corporation outside the United States by any one of three methods:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means . . . by a method that is reasonably calculated to give notice . . . as prescribed by the foreign country's law for service in that country . . . or
>
> (3) by other means not prohibited by international agreement, as the court orders.

*Id.* 4(f)(1)–(3). Direct "service pursuant to Hague Convention procedures is required only if the method of serving process involves the transmittal of documents abroad." *Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F.2d 533, 537 (5th Cir. 1990); *see also Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988) ("The only transmittal to which the Convention applies is a transmittal abroad that is required as a necessary part of service.").

### III. THE COURT GRANTS ZTE CORPORATION'S MOTION TO DISMISS

ZTE Corporation now moves under Rule 12(b)(5) to dismiss for improper service [53]. It argues that Fundamental's attempt to indirectly serve ZTE Corporation by serving ZTE USA was insufficient, and that the Court therefore lacks jurisdiction over ZTE Corporation.[2] The Court agrees that Fundamental did not properly serve ZTE Corporation by serving ZTE USA. The Court thus grants ZTE Corporation's motion to dismiss.

#### *A. Fundamental Did Not Properly Serve ZTE Corporation by Serving ZTE USA*

In *Schlunk*, the Supreme Court held that when permitted by a state's long-arm statute, a party may effect service on a foreign corporation by serving its domestic subsidiary without following Hague Convention procedures. 486 U.S. at 707–08 ("Where service on a domestic agent is valid and complete under both state law and the Due Process Clause, our inquiry ends and the Convention has no further implications.").[3] The *Schlunk* Court held that the Hague Convention did not prevent a plaintiff from serving a German corporation by serving its wholly owned American subsidiary where the subsidiary was, according to state law, the German corporation's involuntary agent for service of process. *Id*.

---

[2] ZTE Corporation does not contest Fundamental's attempt to serve process via Hague Convention procedures. Indeed, ZTE Corporation states that direct service under the Hague Convention is the only valid method by which Fundamental could have effected service on it. The Court will thus limit its analysis to Fundamental's indirect service attempt via service on ZTE USA.

[3] The Supreme Court in *Schlunk* applied the Illinois long-arm statute, but courts have recognized that the Texas long-arm statute "reach[es] as far as the federal constitutional requirements of due process will allow." *See, e.g.*, *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007).

Consequently, the Fifth Circuit has recognized that "even if a domestic subsidiary is not explicitly authorized by its foreign parent corporation as an agent for service, the subsidiary might still be capable of receiving such service." *Lisson*, 262 F. App'x at 570. "[A]s long as a foreign corporation exercises such control over the domestic subsidiary that the two entities are essentially one, process can be served on a foreign corporation by serving its domestic subsidiary – without sending documents abroad." *Id.* (quoting *Sheets*, 891 F.2d at 536). In other words, the subsidiary must be the alter ego of the parent. *Paradigm Entm't, Inc. v. Video Sys. Co., Ltd.*, No. 99-CV-2004, 2000 WL 251731, at *3 (N.D. Tex. Mar. 3, 2000). Here, ZTE Corporation did not explicitly authorize ZTE USA to accept service on its behalf. The Court therefore must decide whether, under Texas law, ZTE USA is the alter ego of ZTE Corporation.

In determining whether a subsidiary is the alter ego of its parent, courts examine "the totality of the circumstances in which the instrumentalities function." *Berry v. Lee*, 428 F. Supp. 2d 546, 554 (N.D. Tex. 2006) (citing *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 359 (5th Cir. 2003)). Courts are more likely to conclude that the entities are distinct where factors such as the following exist:

- The daily operations of the corporations are separate.

- Formal barriers exist between the management of the respective companies.

- Parties with whom the corporations come into contact are apprised of the companies' separate identities.

- The companies keep separate books and accounts.

- The companies file separate tax returns.

*Berry*, 428 F. Supp. 2d at 554. In contrast, courts are more likely to conclude that the companies are a single entity where factors such as the following exist:

- The companies share common business names, business departments, offices, directors or officers, employees, stock ownership, financing, and accounting.

- One corporation pays wages to the other corporation's employees.

- The employees of one corporation render services on behalf the other corporation.

*Id*. "No single factor is determinative, and the ultimate question is one of control." *Id*. (citing *Bridas*, 345 F.3d at 359). Indeed, the Fifth Circuit has "noted often that 100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983) (citing *Walker v. Newgent*, 583 F.2d 163, 166 (5th Cir. 1978)). Instead:

> [O]ur cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes. The degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship. All the relevant facts and circumstances surrounding the operations of the parent and subsidiary must be examined to determine whether two separate and distinct corporate entities exist.

*Hargrave*, 710 F.2d at 1160 (citations omitted) (collecting cases).

Here, ZTE Corporation argues that it and ZTE USA are distinct entities. ZTE Corporation concedes that it owns 100% of ZTE USA's outstanding stock, but points to the following factors to argue that the two companies are separate:

- The companies are geographically distinct. ZTE Corporation has 81,000 employees, is headquartered in China, and operates worldwide. ZTE USA has 400 employees, is headquartered in Texas, and operates only in the United States.

- The companies have separate leadership. ZTE Corporation is led by Xianming Zhao as president and Yimin Yin as chairman. Meanwhile, ZTE USA is led by chief executive officer ("CEO") and chairman Lixin Cheng.

- The companies maintain separate accounting systems and separately report costs and revenues. They also have separate human resources departments.

- The companies operate under separate bylaws.

Mot. to Dismiss 2–3, 8–9 [53].

In response, Fundamental points to the following factors to argue that ZTE USA is ZTE Corporation's alter ego:

- The companies share substantially similar names, and their publications frequently refer to both entities individually and collectively as simply "ZTE."

- The companies appear to jointly maintain certain company websites.

- The companies have retained common legal counsel in this and other matters.

- The companies share at least two officers. Cheng, the CEO and chairman of ZTE USA, also serves as CEO of ZTE Corporation's Mobile Devices unit. And Matthew Bell, Chief Compliance Officer at ZTE USA, also serves as Chief Export Compliance Officer for ZTE Corporation.

- As part of a recent plea agreement, ZTE Corporation agreed to forfeit ZTE USA's assets if it did not satisfy the money judgment entered against it.

- ZTE USA's legal personnel have issued a power of attorney on behalf of both entities and have initiated trademark proceedings to challenge proposed marks that may cause confusion with ZTE Corporation's registered marks.

- In testimony to Congress in 2012 and in one press release, ZTE Corporation referred to ZTE USA's activities as its own.

- ZTE USA's domestic offices have historically displayed ZTE Corporation's logo on the walls, and ZTE USA's website features and makes use of ZTE Corporation's registered trademarks.

Resp. 6–9 [68].

While Fundamental has adduced some facts showing that ZTE Corporation and ZTE USA are not entirely distinct, it has not shown that ZTE Corporation exercises a degree of control over ZTE USA "greater than that normally associated with common ownership and directorship." *See Hargrave*, 710 F.2d at 1160. The two companies maintain separate headquarters, leadership, accounting systems, human resources departments, and bylaws. They also engage in distinct, but related, business activities in different geographic markets.

This is sufficient to show that ZTE USA is not the alter ego of ZTE Corporation. Fundamental's attempt to serve ZTE Corporation indirectly by serving ZTE was therefore improper. The Court thus grants ZTE Corporation's motion to dismiss.

### IV.  THE COURT PERMITS FUNDAMENTAL TO EFFECT ALTERNATIVE SERVICE ON ZTE CORPORATION

Fundamental moves the Court to permit alternative service under Rule 4(f)(3) on ZTE Corporation through its legal counsel in this action. Fundamental notes that, although it is attempting to serve ZTE Corporation in China in accordance with the Hague Convention, such service may take 18 months or longer – and the exact time needed for completion is unpredictable. It thus argues that alternative service on ZTE Corporation's counsel is likely the best, fastest, and most reliable service method. The Court agrees.

"The task of determining when the particularities and necessities of a given case require alternate service of process is placed squarely within the sound discretion of the district court." *SEC v. Millennium Bank*, No. 7:09-CV-050-O, 2009 WL 10689097, at *1 (N.D. Tex. Oct. 21, 2009) (internal quotation marks omitted). Courts simply must ensure that alternative service under Rule 4(f)(3) "comport[s] with constitutional notions of due process." *RPost Holdings, Inc. v. Kagan*, No. 2:11-CV-238-JRG, 2012 WL 194388, at *2 (E.D. Tex. Jan. 23, 2012) (citing *Gramercy Ins. Co. v. Kavanagh*, No. 3:10-CV-1254, 2011 WL 1791241 (N. D. Tex. May 10, 2011) and *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir.2002)). Due process, in turn, requires "reasonable notice and an opportunity to be heard." *Gramercy*, 2011 WL 1791241, at *1.

The unique circumstances of this case support Fundamental's request for alternative service. ZTE Corporation's counsel also represents ZTE USA in this action. Service on ZTE Corporation's counsel would not require the transmittal of documents abroad, so the Hague Convention would not apply. Such service would satisfy due process because it would provide ZTE Corporation with notice of the action and enable it to present its objections.[4] And it would save the parties the time and expense associated with proceeding solely via Hague Convention procedures. *See Affinity Labs of Texas, LLC v. Nissan N. Am. Inc.*, No. WA:13-CV-369, 2014 WL 11342502, at *3 (W.D. Tex. July 2, 2014) (noting that "saving time and expense are valid reasons to request an alternative method of service."). The Court thus permits Fundamental to effect alternative service under Rule 4(f)(3) on ZTE Corporation through its counsel in this matter.

## CONCLUSION

The Court grants ZTE Corporation's motion to dismiss for improper service. However, the Court permits Fundamental to effect alternative service on ZTE Corporation by serving its counsel in this case.

Signed March 16, 2018.

David C. Godbey
United States District Judge

---

[4] The Court notes that ZTE Corporation is in fact already aware of the pendency of this action, as it is the party moving to dismiss for improper service.

ORDER – PAGE 11